IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DAVID J. PYLES,

        Plaintiff,

v.

MIKE WINTERS, PHILLIP CICERO,
JACKSON COUNTY, SCOTT CLAUSON,
CITY OF MEDFORD

        Defendants.

Civ. No. 1:12-cv-00346-CL

REPORT & RECOMMENDATION

CLARKE, Magistrate Judge.

Plaintiff asserts claims against defendants for violations of his Second, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983; he also alleges claims for intentional infliction of emotional distress and false arrest under Oregon state law. The case comes before the court on motions for summary judgment filed by defendants City of Medford and Scott Clauson [#38][1] (collectively "Medford defendants") and defendants Jackson County, Philip Cicero, and Mike Winters [#47] (collectively "Jackson County defendants"). For the reasons

---

[1] Brackets numbers indicate where the document can be found in the case docket on the Electronic Court Filing (ECF) system.

below, the defendants' motions should be GRANTED, and all other pending motions should be denied as moot.

## BACKGROUND

Plaintiff David Pyles was employed as a transportation planner by the Oregon Department of Transportation (ODOT) for eight years. Decl. George 3 [#42]. He began having ongoing conflicts with his supervisor in June, 2009. Decl. Ford 6 [#40]. Pyles contends that at all times he was a hardworking and dedicated employee. He claims that was only lawfully pursuing his rights as an ODOT employee.[2] However, on March 4, 2010, Pyles was told that he was being placed on administrative leave. Id. His manager attributed this decision to performance issues and outbursts in the office as well as a perceived mental decline indicated by poor hygiene and a disheveled appearance. Id. Pyles' supervisors informed him via letter that he would be working from home until he could undergo a full psychiatric evaluation for fitness for duty. Id. According to his supervisors, after Pyles was given the letter he caused a scene for about 20 minutes, yelling to others in the office that he was signing the letter against his will. Id. Pyles was ultimately escorted off the premises by two uniformed Oregon State Police (OSP) officers. Id.; Decl. George 3 [#42].

The Jackson County Sheriff's Office (JCSO) provides law enforcement services for White City, and the JCSO Search and Rescue and Marine Patrol substation is adjacent to the White City ODOT office. JCSO Deputy Phil Cicero worked out of the substation at the time, and at 8 a.m. on March 5, he met ODOT District Manager Gerald Marmon at the ODOT office next door. Marmon told Deputy Cicero about the previous day's events. He informed Cicero that ODOT was concerned about a potentially violent or retaliatory response from Pyles, such

---

[2] It is the Court's understanding that Plaintiff Pyles entered into a settlement agreement with ODOT; however, reaching a conclusion regarding his disputed employment status is not necessary for the Court's ruling in this case.

that it hired a private security company to provide extra security at the offices located in White City and Roseburg. Marmon asked Cicero to patrol the ODOT parking lot, which is connected to the substation parking lot, periodically during the day in case Mr. Pyles returned to the building. Deputy Cicero in turn contacted the OSP Firearms Unit and requested notification of any firearms purchases by Pyles during the next few weeks. Decl. Cicero 5-7 [#49].

The next day, March 6, 2010, Deputy Cicero received notice and informed his supervisor that Pyles had legally purchased one H&K USP .45 caliber semiautomatic handgun. Decl. Cicero 9 [#49]. On March 7, JCSO Sheriff Mike Winters organized a briefing with representatives from OSP and the City of Medford Police Department (Medford PD). ODOT manager Marmon was also present at the briefing, and explained the recent events to the group. Decl. Winters 5 [#50]. Information was gathered through the OSP Firearms Unit that Pyles had actually purchased at least three firearms from licensed dealers in Jackson County in the days since being placed on leave – two handguns and an AK-type assault rifle. Decl. George 3 [#42].

Medford PD also conducted an investigation. By talking with ODOT supervisors and employees, Medford PD learned that some of Pyles' co-workers were staying with friends or family members out of concern for their own safety. Decl. Ford 7 [#40]. Mindy Swain, an ODOT human resources employee, told Det. Ford that she was not going to send her daughter to school. Decl. Ford 7 [#40]. She explained that she had a meeting with Pyles three or four weeks before the incident, in which Pyles became extremely angry with her, raised his voice, and pointed at her saying, "I'll get you for this. I will be vindicated, but this is not a threat." Decl. Ford 7 [#40]. Det. Ford confirmed through Marmon that ODOT had hired a security guard to be at the office during business hours because they were worried about potential work-place violence from Pyles. Decl. Ford 7 [#40].

Plaintiff Pyles consistently disputes the reports made to officers as exaggerated and untrue. His position is that he never threatened anyone, and he believes he was never a danger to himself or others. He asserts that he had a right to lawfully purchase the firearms, and he contends that the timing of his purchase was purely coincidental and unrelated to his dispute with his supervisors at ODOT.

Nevertheless, on the night of March 7, 2010, OSP issued a teletype stating that Pyles had purchased two additional firearms. Decl. George 3-4 [#42]. Later that same night, OSP issued a second teletype stating that there was probable cause to detain Mr. Pyles for a peace officer hold. Decl. George 4 [#42]; Decl. Ford 5 [#40]. As a result of the information provided, security procedures were arranged, and OSP requested that Medford PD conduct surveillance of Mr. Pyles' residence. Decl. George 3 [#42].

At 5:46 a.m. on March 8, 2010, with other Medford PD officers and a SWAT team waiting outside Pyles' house, Sgt. Scott Clauson contacted Pyles by telephone. Pyles expressed concern about the fact that there was a SWAT team outside. Clauson told Pyles over the course of several telephone calls that he was not under arrest, as he had not committed a crime, but that he was concerned for Pyles' safety based on information received about his employment situation. Eventually, after calling his union representative and taking a shower, Pyles agreed to come outside and talk to Clauson. At that point, Pyles was placed into handcuffs, and his firearms were seized from his house. Decl. Clauson 5 [#41].

Mr. Pyles was then transported to the Rogue Valley Medical Center for a mental health evaluation. An emergency room doctor reviewed the information given by Medford PD, and then called on a psychiatrist to help evaluate Pyles. After receiving the information and speaking to Mr. Pyles, the psychiatrist did not believe him to be a danger to himself or others, and she

recommended that he be released. Officers then drove Pyles back to his residence. A few days later, Pyles requested the return of his firearms. On March 12, 2010, Sgt. Clauson and others returned the seized firearms and ammunition to Pyles at his house. Decl. Clauson 6 [#41].

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson, 477 U.S. at 248).

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

Plaintiff asserts a variety of §1983 civil rights claims against the defendants: (1) violation of the Fourth Amendment based on unreasonable search and seizure by defendants Clauson, Medford, and Jackson County; (2) violation of the Due Process Clause of the Fourteenth Amendment by defendants Clauson and Medford; (3) violation of the Second Amendment by defendants Winters, Cicero, Jackson County, and Medford; and (4) violation of the First Amendment by defendants Winters and Jackson County. Plaintiff also asserts state law claims for intentional infliction of emotional distress, against defendants Medford and Jackson County, and false arrest, against Jackson County.

**1. Medford defendants' motion for summary judgment should be granted.**

The City of Medford and Sgt. Scott Clauson move for summary judgment on all claims against them based on the assertion that their actions were expressly permitted by Oregon statute.

**a. Medford defendants' actions were lawful under O.R.S. § 426.228(1).**

Oregon law allows an officer to take a person into custody pursuant to a "peace officer hold" when "the officer has probable cause to believe [he] is dangerous to self or to any other person and is in need of immediate care, custody, or treatment for mental illness." O.R.S. § 426.228(1). The term "probable cause" is not defined in O.R.S. § 426, but Oregon courts have held that, by analogy to O.R.S. § 131.005,[3] it may be defined as a substantial objective basis for believing that more likely than not a person is mentally ill. State v. Smith, 71 Or. App. 205, 211, 692 P.2d 120, 124 (1984). "The determination of probable cause is a legal, not a factual, conclusion. Probable cause does not require certainty." State v. Herbert, 302 Or. 237, 241, 729 P.2d 547 (1986). As recognized by other courts, "[a] police officer need not personally witness

---

[3] O.R.S. 131.005(11) provides: "'Probable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."

the behavior giving rise to the probable cause . . . and can rely on another officer's direction or a reliable informant." Chathas v. Smith, 884 F.2d 980, 987 (7th Cir. 1989). In addition, if there is probable cause, it is irrelevant if the person turns out to be noncommittable. Id.

In this case, the issue is not whether the plaintiff was in fact mentally ill, but whether the Medford defendants had information sufficient for probable cause – meaning a substantial objective belief that it was more likely than not – that the plaintiff was a danger to himself or others. The Court finds that there was probable cause for a peace officer hold.

First, the Oregon State Police issued a teletype stating that there was probable cause to detain the plaintiff for a peace officer hold. Decl. George 4 [#42]; Decl. Ford 5 [#40]. The Medford defendants were entitled to rely on this information, as they had no reason to believe it was unreliable. Second, the investigation and interviews conducted by the Medford defendants indicated that plaintiff allegedly had a history of erratic behavior and angry outbursts at the office, that he was upset with his supervisors for placing him on leave, that he had purchased a number of weapons within a short amount of time, and that his co-workers were afraid of workplace violence, to the extent that they left their homes and kept their children home from school. While some of these reports may have ultimately proved to be inaccurate, the Medford defendants had no reason to discount them or consider them unreliable. Therefore, even apart from the OSP teletype, the Medford defendants had probable cause to place the plaintiff in a peace officer hold under O.R.S. § 426.228(1).

After taking the plaintiff into custody, the defendants took him to the hospital where he was evaluated by an emergency room doctor and a doctor of psychiatry. When these doctors determined that he should be released, the defendants drove plaintiff back to his home and released him. These actions were proper under O.R.S. § 426.228(1), which states that "a peace

officer shall remove a person taken into custody under this section to the nearest hospital or nonhospital facility approved by the Oregon Health Authority." The statute also provides:

> When a peace officer or other authorized person, acting under this section, delivers a person to a hospital or nonhospital facility, a physician licensed by the Oregon Medical Board shall examine the person immediately. If the physician finds the person to be in need of emergency care or treatment for mental illness, the physician shall proceed under ORS 426.232, otherwise the person shall not be retained in custody. If the person is to be released from custody, the peace officer or the community mental health program director shall return the person to the place where the person was taken into custody unless the person declines that service.

O.R.S. § 426.228(4).

Finally, the plaintiff claims in various motions that the defendants did not comply with the subsection of the peace officer hold statute that states, "The officer shall prepare a written report and deliver it to the treating physician. The report shall state: (a) The reason for custody; (b) The date, time and place the person was taken into custody; and (c) The name of the community mental health program director and a telephone number where the director may be reached at all times." O.R.S. § 426.228(1). However, this document, which the defendant claims does not exist, may be found in multiple places in the record, most recently on page 12 of the attachment to the plaintiff's latest motion [#76]. It is unclear whether the plaintiff would have a private cause of action arising out of the omission of that report; however, the report is properly completed as required.[4]

### b. All federal claims fail as a matter of law.

Plaintiff's federal claims are asserted pursuant to 42 U.S.C. § 1983. To prevail on a claim under this statute, a plaintiff must demonstrate that: 1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and 2) the conduct was committed

---

[4] The Court notes that the report does not list the name and number of a community health program director because that portion of the report is not applicable unless the officer is acting according to such a director's instructions.

by a state actor or a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); L.W. v. Grubbs, 974 F.2d 119, 120 (9th Cir. 1992), cert. denied, 508 U.S. 951 (1993). In addition, where a plaintiff seeks to impose liability under 42 U.S.C. § 1983 against a municipality, he or she must also establish that a policy or custom existed that was the moving force behind the violation at issue. See Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1110–11 (9th Cir. 2001). It is undisputed that the defendants in this case were acting under color of state law; however, the plaintiff's constitutional rights were not violated because the defendants had probable cause for a peace officer hold, as discussed above.

The Fourth Amendment protects a person's right to be free from unreasonable search and seizure. Kyllo v. United States, 533 U.S. 27, 31 (2001). The Medford defendants' actions constituted a search and seizure within the meaning of the amendment's text. See United States v. Mendenhall, 446 U.S. 544, 544 (1980). However, the defendants had probable cause to effectuate a peace officer hold under O.R.S. § 426.228(1), and once it was determined that the plaintiff was not a danger to himself or others, he was released, and his firearms were returned. Thus, the defendants did not exceed the scope of the authorized peace officer hold, and the plaintiff's Fourth Amendment rights were not violated.

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." It is established that involuntary confinement or civil commitment is a significant deprivation of liberty that requires due process protections. Jensen v. Lane Cnty., 222 F.3d 570, 574 (9th Cir. 2000) (citing Addington v. Texas, 441 U.S. 418, 425 (1979)). However, the Oregon statute that authorizes a peace officer hold also defines the process due in the course of such a seizure. Because the

defendants complied with the requirements of O.R.S. § 426.228(1), the plaintiff received due process and his Fourteenth Amendment rights were not violated.

Recently, the Supreme Court recognized an individual right under the Second Amendment. <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570 (2008). Even more recently, the Court held that this right is fundamental and is incorporated against states and municipalities under the Fourteenth Amendment. <u>McDonald v. City of Chicago, Ill.</u>, 130 S. Ct. 3020, 3026 (2010). However, this right is not absolute; as the Court stated in <u>Heller</u>, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." <u>Heller</u>, 554 U.S. at 626. In this case, defendants did not operate to prevent the plaintiff from purchasing or owning legal firearms. They seized his firearms lawfully based on probable cause that he was mentally ill and a danger to himself or others. As discussed above, the fact that the plaintiff was not actually mentally ill is irrelevant. Once it was determined that the plaintiff was not a danger, he was released, and his firearms were returned to him within a reasonable amount of time. Thus, the plaintiff's Second Amendment rights were not violated.

   **c. State law claim for intentional infliction of emotional distress fails as a matter of law.**

Under Oregon law, a plaintiff claiming intentional infliction of emotional distress must set forth facts demonstrating the following elements: (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. <u>McGanty v. Staudenraus</u>, 321 Or. 532, 543, 901 P.2d 841, 849 (1995) (quoting <u>Sheets v. Knight</u>, 308 Or. 220, 236, 779 P.2d 1000, 1009 (1989)). In this case, the plaintiff has alleged that the defendants' acts caused him severe emotional distress; however, that distress emanates from his being taken into custody according to a lawful peace

officer hold, as discussed above. Thus, the Medford defendants' acts did not constitute an extraordinary transgression of the bounds of socially tolerable conduct because they were performed in accordance with Oregon statute.

### 2. Jackson County defendants' motion for summary judgment should be granted.

The Jackson County defendants move for summary judgment on all claims based on the fact that their actions were lawful, and they did not participate in the seizure of the plaintiff or his firearms.

The Jackson County defendants were involved in the investigation of the plaintiff in the days after he was placed on administrative leave and leading up to the peace officer hold. They were informed of the confrontation between plaintiff and his supervisors, as well as ODOT employees' fears of potential retaliatory violence. JCSO Deputy Cicero used legitimate law enforcement channels to learn about, and then communicate, the fact that plaintiff purchased several firearms in the days after he was placed on leave. Sheriff Winters organized a briefing that shared this information with other law enforcement agencies in the area. All of these actions were lawful. Additionally, the plaintiff's claims all spring out of the incident in which he was seized, along with his firearms. The Jackson County defendants did not participate in the seizure of the plaintiff or his firearms, therefore all of the plaintiff's claims against them fail.

Additionally, as established above, the plaintiff David Pyles was seized lawfully according to a peace officer hold under O.R.S. § 426.228(1). Therefore, even if the Jackson County defendants did participate in the peace officer hold of Mr. Pyles, their actions would not have violated his constitutional rights.

### 3. All other motions should be denied.

Plaintiff currently has four motions pending on the court docket for this case: a "motion to compel defendants' immediate production of legal discovery documents" [#54], two "motion(s) to admit document to the whole case record, the plaintiff's notice of tort claim" [#74, #76], and a motion "objecting to minutes & outcome to pre-hearing telephonic status conference" [#79]. The Court has already denied several similar motions in this case as improper under the Federal Rules of Civil Procedure and Evidence. In addition, as non-party filer Oregon State Police points out in its motion to strike [#60] the plaintiff's motion to compel, the document the plaintiff requests has already been provided to him, as evidenced by the fact that it is attached to his motion. However, the Court has carefully reviewed the motions and finds that they do not impact the conclusions reached here. Therefore, unless otherwise stated, all motions currently pending should be denied as moot.

## CONCLUSION

This Court understands Plaintiff David Pyles' strong objections to the actions of the defendants, including the large number of police personnel involved. He emphasizes the fact that he was found not to be a danger to himself or others by the medical evaluation at Rogue Valley Medical Center. Indeed, the right to be free from unlawful seizure is one of the most fundamental rights protected by the United States Constitution.

The defendant police agencies and officers, however, were presented with specific information that clearly presented a serious potential danger to plaintiff and public safety, regardless of whether the information presented ultimately turned out to be true or false. It may be that plaintiff's safe transport to the hospital could have been accomplished with less police personnel. However, the defendants risk their lives every day, and they have to err on the side of safety for themselves and the public. No evidence in the record suggests that the defendants

acted with ill will or as part of a conspiracy to target the plaintiff. Defendants acted in good faith to protect the plaintiff and the public and, overall, did so in a lawful, fair, and courteous manner. Based on the information available, the defendants reasonably determined that the risk of doing nothing was simply too great. This Court will not second-guess that decision.

## RECOMMENDATION

For the reasons stated above, defendants' motions [#38, #47] should be GRANTED.

All other pending motions should be DENIED.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed.* See FED. R. CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED this _26_ day of April, 2013.

_____
MARK D. CLARKE
United States Magistrate Judge